# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| APRIL MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:15-CV-06012-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff April Miller's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had a severe impairment—a mood disorder alternately diagnosed as bipolar disorder and depression—but retained the residual functional capacity ("RFC") to work as an order filler, a metal spray machine operator, and a housekeeper, therefore she was not disabled.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits on May 8, 2012, alleging a disability onset date of March 1, 2011.

The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, during which Plaintiff amended her onset date to March 12, 2012. On November 20, 2013, the ALJ issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on December 4, 2014, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

(8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact.  *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he: (1) mischaracterized the evidence concerning her credibility; (2) failed to properly weigh her treating psychiatrist's opinion; and (3) failed to incorporate into his RFC determination a limitation on her ability to interact with supervisors.  These arguments are unavailing.

**A.     The ALJ's credibility assessment is supported by substantial evidence.**

The ALJ found Plaintiff's allegations that her symptoms were disabling were not credible because such symptoms were inconsistent with her daily activities, "routine, infrequent, and conservative" treatment, "lack of complete compliance" with treatment, improvement with treatment, and sporadic work history.  R. at 20.  Plaintiff contends that this credibility determination is flawed because it is based on a mischaracterization of the evidence.  Pl.'s Br. (Doc. 8) at 21.  Plaintiff concedes the ALJ correctly identified a range of activities she can perform, but argues the ALJ failed to mention that these activities can only be performed subject to various restrictions and limitations.  For example, while the ALJ noted she could still watch TV while manic, he overlooked the fact that she cannot focus on a show and does not understand why she is watching it when manic.  R. at 36.  Similarly, while the ALJ noted that she can leave the house to go shopping or go to a doctor's appointment, he ignored the fact that her mother accompanies her on such trips.  R. at 37.  Plaintiff also argues that missing one out of fifty-six doctors' appointments does not, as the ALJ contends, mean she has been noncompliant with treatment.  Pl.'s Br. at 23.

3

Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

While the ALJ's finding that Plaintiff was noncompliant and had a poor work history is not supported by the record, the Court finds the other reasons listed by the ALJ for his credibility assessment are supported by substantial evidence on the record.

First, Plaintiff participated in a wide range of activities during the relevant time frame, including working as a substitute nurse, babysitting a one year-old child, cooking, going shopping and attending doctor's appointments (albeit with assistance from her mother), exercising, taking care of a dog, cleaning, doing laundry, mowing the yard, reading regularly, attending basketball games with family, socializing with friends, and dating. R. at 36-40, 160-63, 256, 259, 301, 308, 320, 323-25. She could also drive and manage her own money, and she volunteered with the Red Cross and was deployed to New York City following Hurricane Sandy. R. at 164-65, 322, 324-25. Of course, the fact that she is capable of occasionally participating in these activities does not prove she is capable of full-time employment. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (Posner, J.). The symptoms of a person with bipolar disorder wax and wane in severity; the patient may be able to perform work-related activities at some times but not others. *Id*. But given the wide range of activities Plaintiff could perform, the Court cannot say the ALJ erred in finding she was not credible to the extent she claimed her symptoms were totally disabling as alleged. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (seeking work and working are activities inconsistent with disability); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (holding no error in discrediting a plaintiff's credibility who "was not unduly restricted in his daily activities" and possessed the ability to cook, take care of his dogs, and shop

for groceries, among other things); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain.").

Second, her symptoms appeared to be controlled by treatment and medication, and "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010).

Third, Plaintiff's treatment was arguably "routine, infrequent, and conservative" as the ALJ found. Her treatment consisted of medication and short therapy sessions. This treatment appeared to be controlling her symptoms through March of 2013, even after her treating psychiatrist, Dr. Mehnaz Khan, M.D. ("Dr. Khan"), began tapering her medication. R. at 237-43, 295, 309-10, 315, 317, 322, 332. This is a valid reason to discredit her testimony. *See Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (holding the ALJ properly considered Plaintiff's conservative treatment in discounting her claim of disabling pain).

Granted, the evidence in the record could support an alternate credibility finding. But this does not change the fact that the ALJ gave good reasons for discounting her credibility, and these reasons are supported by the record. *See Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("We defer to the ALJ's evaluation of [a claimant's] credibility, provided that such determination is supported by good reasons and substantial evidence.") (internal quotations omitted). Consequently, the Court must defer to it. *See Gregg*, 354 F.3d at 713.

**B.     The ALJ did not err in weighing her treating psychiatrist's opinion.**

Plaintiff contends the ALJ erred in discounting Dr. Khan's opinion that Plaintiff was markedly limited in nine areas of work-related functioning, and extremely limited in her ability to complete a normal workday without an unreasonable number of breaks, or to respond appropriately to changes in her work setting. R. at 336-37. Plaintiff argues Dr. Khan's opinion

5

is entitled to great weight and, if fully credited, would have resulted in her being found disabled. Pl.'s Br. at 12.

The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). But "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002).

Although one of the ALJ's findings concerning Dr. Khan's opinion is not supported by the record—namely, that his treatment of Plaintiff was merely medication management—the ALJ gave another, well-supported reason for discounting Dr. Khan's opinion: His opinion was inconsistent with his own treatment notes and the record as a whole. R. at 19. The ALJ discussed Plaintiff's symptoms and treatment notes from Dr. Khan's medical team during the relevant period, including Plaintiff's own observations that she was doing better, had a stable mood, was getting good sleep, and was not experiencing any mania or uncontrolled depression. R. at 17-18, 254, 263, 309, 315, 317, 323, 332, 540. The ALJ also noted that the state agency psychological consultant, Dr. Raphael Smith, Psy.D., opined that Plaintiff's mental impairments caused only mild and moderate restrictions in her work functioning. R. at 18-19, 64. Dr. Smith opined that while she may have difficulties understanding and remembering more detailed instructions, she could remember simple instructions, and so she was capable of performing less demanding work. R. at 64. Because Dr. Khan's opinion that Plaintiff suffered from multiple marked limitations and several extreme limitations was not supported by his own treatment notes and contradicted other medical evidence, the ALJ did not err in giving this opinion little weight.

6

Case 5:15-cv-06012-DGK   Document 12   Filed 02/17/16   Page 6 of 7

*See Strongson v. Barnhart*, 361 F.3d 1066, 1070-71 (8th Cir. 2004) (holding ALJ did not err n discounting treating doctor's opinion that was not supported by clinical findings and inconsistent with his own treatment notes'.

### C. The ALJ did not err in formulating Plaintiff's RFC.

Finally, Plaintiff argues the ALJ erred by failing to include sufficient limitations in the mental portion of RFC determination. Plaintiff argues the ALJ should have incorporated his finding from the Psychiatric Review Technique into the RFC that she had a moderate limitation in social functioning and got along with authority figures when she was not hypomanic. Pl.'s Br. at 18.

Although the ALJ did not articulate any limitation in the RFC on Plaintiff's ability to work with supervisors, he included one in his hypothetical question to the vocational expert ("VE") when he directed she be limited to "only occasional supervisional contact or interaction with coworkers." R. at 42. The VE testified that Plaintiff could perform work existing in significant numbers in the national economy, specifically as an order filler, metal spray machine operator, or housekeeper. Consequently, even if the ALJ erred in not explaining that he was including such a limitation, the error does not justify reversal or remand. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[T]he deficiency does not require reversal since it had no bearing on the outcome.").

### Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  February 17, 2016                     /s/ Greg Kays
                                             GREG KAYS, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT